**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| DANIEL E. WITTE an individual,<br><br>          Plaintiff,<br><br>vs.<br><br>JIM HEITING, in his official capacity with the California State Bar, CHIEF JUSTICE RONALD M. GEORGE, in his official capacity with the Supreme Court of California, et al.,<br>          Defendants. | Case No. 2:05-CV-1046 TC<br><br>**REPORT AND RECOMMENDATION**<br><br>Judge Tena Campbell<br><br>Magistrate Judge Brooke C. Wells |

Before the court are a series of motions. Defendants have filed a Motion to Change Venue, or in the alternative dismiss.[1] Plaintiff, Daniel Witte who is an attorney appearing *pro se*, has filed a Motion for Limited Requests for Admission from Defendants,[2] and a Motion to Amend/Correct Complaint.[3] This case concerns alleged civil rights violations in relation to the collection of bar fees and dues by the California bar.

The factual scenario that gives rise to this complaint is not very complicated. Witte was suspended from the practice of law in California in 2003 for his failure to pay bar dues. The fact of his suspension remained on his record following the subsequent payment of bar dues and the

---

[1] Docket nos. 20, 23.
[2] Docket no. 34.
[3] Docket no. 40.

required late fees.  Witte petitioned the California Supreme Court for relief claiming that his due process rights were violated and that he was not given notice and a hearing prior to his suspension.  The Supreme Court denied his petition.

In his complaint Witte states that he is not "requesting that this Federal District Court review or overturn any past final judgment of any state court against Plaintiff."[4]  Instead, Witte is challenging the "general ongoing scheme of practices, customs, regulations, procedures, and rules promulgated in non-judicial settings by the Bar and by the Court . . . which continue to place Plaintiff and many members of the Bar in ongoing jeopardy."[5]  Notwithstanding Witte's claims in his complaint about challenging general schemes which may enable him to prevail against Defendants' *Rooker-Feldman* arguments, one serious issue remains, jurisdiction over Defendants.

In order to obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must demonstrate that jurisdiction is legitimate under the forum state's laws and that the exercise of jurisdiction comports with the due process clause found in the Fourteenth Amendment.[6]  "In Utah, jurisdiction is appropriate only if plaintiff establishes that: (1) the defendant conducted certain enumerated activities in Utah, and (2) there is a nexus between plaintiff's claim and defendant's conduct."[7]  Utah's long arm statue provides for jurisdiction over

---

[4] Compl. p. 21 (emphasis omitted).
[5] *Id.* p. 22 (emphasis omitted).
[6] *See* Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988).
[7] *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)

an out of state resident based upon seven "enumerated acts."[8]  These include, *inter alia*, "(1) the transaction of any business within this state; (2) contracting to supply services or goods in this state; (3) the causing of any injury within this state whether tortuous or by breach of warranty."[9]

Next, a federal court "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State."[10] The contacts must be sufficient that maintenance of the suit "does not offend traditional notions of fair play and substantial justice."[11]  A defendant's contacts are sufficient if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State."[12]

"'The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing.'"[13] All factual disputes are resolved "in favor of the plaintiff in determining whether plaintiff has made a prima facie showing that establishes jurisdiction."[14]

Witte contends that jurisdiction is proper because Defendants have and are

> regularly directing and conducting correspondence, communication, billings, inappropriate enforcement measures, fraudulent misrepresentations, web site postings and

---

[8] Utah Code Ann. § 78-27-24.
[9] *Id.*
[10] *World-Wide Volkswagon Corp v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 569, 564 (1980) (quoting *International Shoe Co. V. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945)); *see also First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1130 (10th Cir. 1987).
[11] *International Shoe*, 326 U.S. at 316.
[12] *Hanson v. Dencla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958).
[13] *Rambo*, 839 F.2d at 1417 (quoting *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984)).
[14] *Far West*, 46 F.3d at 1075.

public mailings, and other activities and measures in or towards the State of Utah and towards Plaintiff (as a resident of Utah who received correspondence and billings in Salt Lake City), . . in an ongoing effort to exact unjustified dues from Plaintiff, deprive Plaintiff of his federal constitutional rights, and implement the total scheme described within this Complaint.[15]

Defendants argue that there are insufficient contacts with this forum to establish jurisdiction. And, "[n]otwithstanding the lack of minimum contacts, the exercise of personal jurisdiction in this case would offend the traditional notions of fair play and substantial justice."[16] Defendants further argue that Witte has failed to allege, as he must, that Defendants "purposefully directed [their] activities at the forum and that the litigation results from injuries arising out of or relating to those activities."[17]

Even if this court presumes that jurisdiction is legitimate under Utah's long arm statute by interpreting broadly the definition of "any business within this state,"[18] Witte still fails to convince this court that due process would not be violated by exercising jurisdiction over these Defendants. The Tenth Circuit has stated, "It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts."[19] Here, Witte points to communications, letters, billings and correspondence that are and were directed at him as support for meeting the required level of minimum contacts. The court finds these mailings and

---

[15] Compl p. 3.
[16] Mem. in Supp. p. 16.
[17] *Id.* p. 15.
[18] Utah Code Ann. § 78-27-24.
[19] *Far West*, 46 F.3d at 1077 (citing *Continental American Corp. v. Camera Controls Corp.*, 592 F.2d 1309, 1314 (10th Cir. 1982) ("It is fundamental that the mere quantum of contacts between the forum and the defendant is not determative")).

communications inadequate to establish minimum contacts with this forum.[20]

Witte further cites to the California Bar's web site, its interactive nature, and the ability to exchange information which according to Witte establishes jurisdiction.[21]  Courts in the Tenth Circuit have adopted a tricategory approach along a "'sliding scale'"[22] in applying personal jurisdiction standards to Internet usage.  First, personal jurisdiction is present when "'a defendant clearly does business over the Internet' such as entering into contracts.'"[23]  Second, "[a] passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction."[24]  Third, an amorphous category encompassing the middle ground, "interactive Web sites where a user can exchange information with the host computer."[25]  "In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."[26]

In applying these general principles here, the court recommends that jurisdiction should not be exercised.  The evidence before the court indicates that one of the primary functions of the California Bar's Web site is to provide information for those seeking it.  There are stories about current events that affect the bar, its members, and the general public.  There is also the

---

[20] *See id.*
[21] Op. p. 23.
[22] *Patriot Systems, Inc. v. C-Cubed Corp.*, 21 F.Supp.2d 1318, 1324 (D.Utah 1998).
[23] *Id.* (quoting *SF Hotel Co., L.P. v. Energy Invs., Inc.*, 985 F.Supp. 1032, 1034 (D.Kan. 1997) (citation and quotations omitted).
[24] *SF Hotel Co*, 985 F.Supp. at 1034.
[25] *Id.*
[26] *Id.*

opportunity to research an attorney's bar membership record and determine whether one has passed the bar exam. Both would be helpful for the public in deciding whether or not to hire a certain attorney. The general public can also use the Web site to comment about issues that affect the practice of law in California. Finally, members of the bar may login to access additional features that are unavailable to the general public. For example, members of the California bar who login may change their address, pay bar fees, learn about education requirements, access member benefits, and register as an out-of-state attorney.[27]

Given the partially interactive nature of the Web site, the court finds that the California Bar's Web site falls somewhere within the middle ground. It is primarily passive in providing information to the general public but, to members of the bar it is much more interactive. In the court's view, however, it still fails to meet the level of interactivity and commercial exchange required to permit jurisdiction. The majority of the Web site is informational and not commercial in nature. The special features are only available to a specific group of members of the bar who "sign up." Many of the added features available to bar members are the modern equivalent of yesterday's traditional phone calls, letters, communications and mailings which are not sufficient to establish jurisdiction.[28] Moreover, even with these added features, the court finds the Web site is still not very commercial in nature. Increased convenience that likely arose from member requests, i.e. the ability to change one's address or pay bar dues, should not be

---

[27] Presuming that the California Bar's Web site had these functions in 2003, it is quite unfortunate that Witte did not use these features as that may have alleviated much of what led to the instant action.

[28] *See Far West, 46 F.3d at 1077.*

confused with commercial interaction.  In short, the court finds that the Web site's activities, even as directed at bar members, do not confer personal jurisdiction.

Accordingly, Witte fails to make the required showing that Defendants contacts are sufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. Accordingly, this court should not exercise personal jurisdiction over Defendants and this case should be dismissed.

Finally, the court further finds that general jurisdiction is also inappropriate in this case. Witte has failed to set forth the continuous and systematic contacts required to confer general jurisdiction over Defendants.[29]

In closing, the court wishes to address Witte's request that this case be transferred instead of being dismissed.  Witte argues that it is in the "interest of justice to transfer the case rather than dismiss it because, first, Plaintiff has made a "good faith effort to file in a correct, practical, and legally-plausible venue;"[30] second, Plaintiff has timely filed to "avoid creating any unnecessary questions about limitations periods;"[31] and third, the re-filing costs of this case will "approach or exceed any immediate financial remedy that Plaintiff is likely to receive, since the remedies sought in this case are primarily non-monetary in nature."[32]

In the alternative, Defendants' motions also seek a change in venue to the Northern District of California if this court chooses to not dismiss the instant action.

---

[29] *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 1870-73 (1984).
[30] Compl. p. 4.
[31] *Id.*
[32] *Id.* p. 4-5.

It is likely that many of the problems with personal jurisdiction would be alleviated if this case was transferred to the Northern District of California although there does appear to be other very serious defects to Witte's complaint as outlined by Defendants in their motion.[33]  Those issues however, may be better left to a court in California where Defendants reside and where the potential issues in this case concern members of the California Bar.  Therefore, the court leaves the option of transferring the case to the discretion of the district court.  If the interest of justice warrants transfer then venue would be appropriate in California.

---

[33] *See* Mem in Supp.  These include the possibilities of immunity (sovereign, judicial, and legislative), the *Rooker-Feldman* doctrine, a lack of standing, failure to state a claim upon which relief may be granted, *res judicata*, and collateral estoppel.

**RECOMMENDATION**

Based on the foregoing, it is hereby recommended that Defendants' motion be granted and that this case be dismissed for a lack of personal jurisdiction. In the alternative, should the district court find that the interests of justice warrant a transfer to the Northern District of California, then this case should be transferred. All remaining motions should be deemed moot.

Copies of the foregoing report and recommendation are being mailed to all parties who are hereby notified of their right to object. Any objection must be filed within ten days after receiving this Report and Recommendation. Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 25th day of July, 2006.

*Brooke C. Wells*
Brooke C. Wells
United States Magistrate Judge